IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENT THOMAS WARREN,

    Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION,

    Defendant.

Case No. 21-4085-JAR-ADM

## MEMORANDUM AND ORDER

Plaintiff Kent Thomas Warren, who proceeds *pro se*, applied for discharge of nine student loans that are in default as a result of his failure to make payments. The loans are held by Defendant U.S. Department of Education ("the Department"). Plaintiff filed this administrative appeal, challenging the Department's decisions denying his applications for discharge. He asserts that his student loans should be declared void, citing 42 U.S.C. § 2000d and 20 U.S.C. § 1414(b)(3)(A)(iii), under either a false certification (ability to benefit) theory or the "borrower defense." The appeal is fully briefed and the Court is prepared to rule. As described more fully below, the Court affirms the Department's final agency decisions denying Plaintiff's applications for discharge.

**I.      Background**

The following facts are undisputed and supported by the Administrative Record. Plaintiff attended four universities from 2006 to 2014: Southern Illinois University of Carbondale, University of Arizona, Northern Arizona University, and Western Governors University-Utah ("WGU"). The Department holds nine loans that are in default as a result of Plaintiff's failure to make payments as required by the executed promissory notes. Five of these loans are Direct

Stafford Loans.  Two loans are Federal Family Education Loan Program ("FFELP") loans.  The total balance on these loans as of February 15, 2022, is $33,135.

Plaintiff applied for two types of discharge of his student loans.  First, Plaintiff submitted two applications for administrative discharge of his student loans based on false certification/ability to benefit on March 24, 2017, and April 24, 2017.  The Department denied these applications for discharge on September 6, 2018.  In its denial letter, the Department explained that Plaintiff did not qualify for false certification discharge because he had received a high school diploma prior to enrollment.[1]  Because he had a high school diploma, the Department explained, he was an eligible borrower and the schools could not have falsely certified his eligibility unless he had some sort of physical, mental, or legal status or condition at the time of his enrollment.

Second, Plaintiff submitted at least two applications for discharge based on the borrower defense on November 1, 2018, and November 6, 2018.  The Department denied Plaintiff's requests in connection with his enrollment at WGU on October 6, 2020, for "Failure to State a Legal Claim."[2]  This is the only agency decision in the record adjudicating Plaintiff's borrower defense applications.

## II.     Standard

Because Plaintiff proceeds *pro se*, the Court construes his submissions liberally.[3]  But the Court does not assume the role of Plaintiff's advocate, and he still bears "the burden of alleging sufficient facts on which a recognized legal claim could be based."[4]  Under a liberal

---

[1] Doc. 14-3 at 1–2.

[2] Doc. 14-17 at 1–2.

[3] *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018).

[4] *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

construction, Plaintiff's Opening Brief seeks judicial review of the Department's final agency decisions denying his applications for discharge.[5] Plaintiff argues that requiring him to repay his student loans is not in accordance with law because he was discriminated against by the universities he attended due to his status as a United States citizen. Specifically, Plaintiff contends that he was not credited with work and/or life experience as special education and elementary education degree equivalencies, unlike noncitizens who are allowed such credit. Given the universities' discriminatory policies of denying him degrees based on his life and work experience, Plaintiff contends that his loans should be discharged and deemed void.

The Administrative Procedure Act ("APA") allows federal courts to review final agency decisions like the student loan discharge denials in this case.[6] The Court may set aside an agency action or finding if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[7] The Court may find that an agency decision is "arbitrary and capricious" if it "entirely failed to consider an important aspect of the problem," or if it "runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[8] The scope of this review is narrow and the Court may not substitute its own judgment for that of the agency.[9] In considering Plaintiff's challenge, the Department's "decision is entitled to a presumption of regularity, and the challenger bears the

---

[5] In his Opening Brief, Plaintiff expressly withdraws two other claims asserted in his Complaint—that the decisions violate the Equal Protection Clause and that the Department unduly delayed decision making on his applications. Because Plaintiff withdraws these claims, the Court does not consider them.

[6] 5 U.S.C. § 702; *see, e.g.*, *Price v. United States Dep't of Educ.*, 209 F. Supp. 3d 925 (S.D. Tex. 2016) (reviewing challenge to Department of Education decision denying discharge of student loans under the APA).

[7] *Id.* § 706(2)(A).

[8] *Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1263–64 (10th Cir. 2020) (alteration in original) (quoting *Ukeiley v. EPA*, 896 F.3d 1158, 1164 (10th Cir. 2018)).

[9] *Id.* at 1264; *see also Schreiber v. McCament*, 349 F. Supp. 3d 1063, 1069–70 (D. Kan. 2018) (citations omitted), *aff'd sub nom. Schreiber v. Cuccinelli*, 981 F.3d 766 (10th Cir. 2020).

burden of persuasion."[10]  The Court considers only "the agency's contemporaneous explanation in light of the existing administrative record."[11]

### III. Discussion

There are two final agency decisions at issue: the Department's September 6, 2018 decision denying Plaintiff's applications for discharge under a false certification/ability to benefit theory, and the Department's October 6, 2020 denial of his application under the borrower defense as to WGU.  The Court finds that neither decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.

#### A.    False Certification/Ability to Benefit Denial

The Department denied Plaintiff's false certification/ability to benefit applications because he held a high school diploma at the time he applied for his loans.  Under the governing regulations, a borrower asserting false certification/ability to benefit cannot prevail if he has a high school diploma or GED.[12]  The administrative record shows that Plaintiff had a high school diploma, and this was the stated basis for the Department's decision denying him discharge.  Plaintiff therefore fails to establish that the Department's September 6, 2018 discharge denial was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.

---

[10] *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1060 (10th Cir. 2014) (quoting *San Juan Citizens All. v. Stiles,* 654 F.3d 1038, 1045 (10th Cir. 2011)).

[11] *Hays Med. Ctr.*, 956 F.3d at 1263 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019)).

[12] *See* 34 C.F.R. § 682.402(e)(13) (iv) ("[A] student has the ability to benefit from the training offered by the school if the student received a high school diploma or its recognized equivalent prior to enrollment at the school.").  As for FFELP loans, a student does not have the ability to benefit if the school certified his eligibility *and* "[a]t the time of certification, the student would not meet the requirements for employment (in the student's State of residence) in the occupation for which the training program supported by the loan was intended because of a physical or mental condition, age, or criminal record or other reason accepted by the Secretary." *Id.* § 682.402(e)(13)(iii).

### B.     Borrower Defense Denial

The October 6, 2020 final agency action denied Plaintiff's application for a borrower defense discharge as to WGU only because he failed to state a legal claim.  Therefore, the Court must confine its review to that decision.  To the extent Plaintiff asserts a borrower defense based on the conduct of any other university he attended, such claims are not ripe for review.[13]

Plaintiff's WGU loan was a Direct Loan.  The Higher Education Act ("HEA") provides that with respect to Direct Loans, the Department "shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under [the FDLP]."[14]  Under this provision, the Department promulgated regulations that provide an opportunity for borrowers to obtain discharge if the school they attended engaged in misconduct.  For loans disbursed prior to July 1, 2017, a borrower is eligible for such a discharge if "any act or omission of the school attended by the student that relates to the making of the loan for enrollment at the school or the provision of educational services for which the loan was provided that . . . would give rise to a cause of action against the school under applicable State law."[15]

Plaintiff alleges in his Opening Brief that the universities discriminated against him on the basis of his United States citizenship when he was denied teaching credentials and/or college credit based on his life and work experiences.  Thus, the Court must determine if it was arbitrary

---

[13] Plaintiff's borrower defense application dated November 1, 2018, was assigned Application Number 01291344.  The October 6, 2020 final agency decision for WGU reflects this application number.  Plaintiff was notified by the Department on November 23, 2018, that his application would be processed for WGU only, even though he had listed multiple schools on the application, that each school requires a separate borrower defense application number, and that he needed to submit a separate application for each school. There are no other borrower defense decisions in the record other than the October 6, 2020 decision as to WGU.  Doc. 14-17 at 1.

[14] 20 U.S.C. § 1087e(h).

[15] 34 C.F.R. § 685.206(c)(1).

and capricious or otherwise not in accordance with law for the Department to deny Plaintiff's borrower defense application for failure to state a legal claim in light of his allegations that WGU discriminated against him on the basis of his citizenship. Plaintiff cannot meet his burden of showing that this decision should be overturned under the APA.

First, as described above, the Department was required to consider whether WGU's alleged misconduct would give rise to a cause of action against the school under applicable State law. Plaintiff currently resides in Kansas.[16] The Kansas Act Against Discrimination protects equal opportunities to all citizens without regard to race, religion, color, sex, disability, familial status, national origin or ancestry.[17] Citizenship is not a protected class. Also, Plaintiff is mistaken that Kansas teaching requirements are less onerous for foreign citizens than they are for United States citizens. In Kansas, a bachelor's degree is universally required for all initial teaching license applicants.[18] Foreign exchange teaching license applicants must satisfy different licensing requirements, including an official credential by an evaluator approved by the state board, "verification of employment from the local education agency, including the teaching assignment, which shall be to teach in the content area of the applicant's teacher preparation or to teach the applicant's native language," and "verification of the applicant's participation in the foreign exchange teaching program."[19] A foreign exchange teaching license is only renewable

---

[16] The Court acknowledge that WGU, the only university addressed by the Department's final agency action, is located in Utah. Plaintiff provides no authority that a cause of action based on the type of discrimination alleged by Plaintiff here would be available to him under Utah law.

[17] K.S.A. § 44-1001.

[18] K.A.R. § 91-1-203(a)(1)(A).

[19] *See id.* § 91-1-203(g)(1)(C)–(D).

for a maximum of two additional school years.[20]  Therefore, the Department's decision that Plaintiff's borrower defense failed to state a legal claim was not contrary to law.

Plaintiff's reliance on 42 U.S.C. § 2000d is misplaced even if the Department should have considered this federal law when denying Plaintiff's borrower defense application.  This provision of Title VI of the Civil Rights Act states that: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[21]  While Plaintiff is correct that this provision of Title VI addresses unlawful discrimination in federally funded education programs.  But just like Title VII, Title VI does not list citizenship as a protected class.[22]  Indeed, Plaintiff's attempt to litigate this claim against the universities directly was dismissed in part for failure to state a claim because citizenship is not a protected class under Title VI.[23]

Plaintiff attempts to avoid this result by couching the alleged discrimination as based on national origin.  National origin discrimination, which is unlawful under Title VI, is not the same as discrimination on the basis of citizenship.[24]  Plaintiff's factual allegations do not assert his ancestry beyond the fact of his United States citizenship.  He therefore fails to allege facts to

---

[20] *Id.* § 91-1-203(g)(2).

[21] 42 U.S.C. § 2000d.

[22] *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973) ("[N]othing in the [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage."); *Pathria v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455–56 (5th Cir. 2013) ("We have held that citizenship and national origin should not be conflated, and that citizenship is not a protected category under Title VI." (citing *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1059–60 (5th Cir. 1998))).

[23] *See Warren v. Univ. of Illinois-Champaign/Urbana*, No. 19-4094-SAC-ADM, 2020 WL 1043637, at *3 (D. Kan. Mar. 4, 2020).

[24] *Espinoza*, 414 U.S. at 95 & n.6; *see also Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 940 (7th Cir. 2012) ("Thus, national origin discrimination as defined in Title VII encompasses discrimination based on one's ancestry, but not discrimination based on citizenship or immigration status."); *Pathria*, 531 F. App'x at 456 (explaining that there is a difference between national origin and citizenship discrimination under Title VI) (citation omitted).

support a claim that he was subjected to national origin discrimination. Plaintiff's position is that foreign citizens are treated more favorably by the universities he attended than United States citizens. Because citizenship is not a protected class under Title VI, this provision would not render the final agency decision contrary to law even if the Department was required to consider it under the applicable regulations.

Plaintiff also cites 20 U.S.C. § 1414(b)(3)(A)(iii) for the proposition that the final agency actions here are not in accordance with law. This provision deals with evaluation procedures for children with disabilities as a prerequisite for special education classes and related services. It has no application to Plaintiff's claims in this case.

### C.    New Arguments in the Reply

Finally, the Court briefly addresses Plaintiff's assertion in the Reply that the Department's decisions run afoul of the Fourteenth Amendment, despite the fact that he explicitly withdrew that claim in the Opening Brief.[25] Plaintiff contends that the Department's focus on Kansas law ignores the equal protection and due process protections of the Fourteenth Amendment, which he asserts the Department violated by not permitting discharge of his student loans to schools that declined to credit his work and/or life experience as a valid means of expertise in becoming a teacher. As stated above, when considering Plaintiff's borrower defense applications, the Department was required to consider whether WGU's alleged misconduct would give rise to a cause of action against the school under applicable State law. It was not arbitrary or capricious for the Department to deny Plaintiff's discharge applications for failure to meet this governing standard. Moreover, Plaintiff's new claim of a due process violation is based on conclusory allegations that the Department did not provide him with notice, an

---

[25] Doc. 16 at 1.

opportunity for hearing, and an unbiased decisionmaker.  The administrative record does not support these conclusory assertions.

Finally, Plaintiff asks in the Reply brief why his wages have not been garnished despite the denial of his discharge applications.  As the Department states in its Response, it is not currently collecting against any borrowers due to student loan relief measures in place in response to COVID-19.  The Department's collection efforts, or lack thereof, have no bearing on the narrow issue before this Court: whether the Department's final agency decisions are arbitrary and capricious, an abuse of discretion, or contrary to law.  For all of the reasons explained above, the Court affirms the Department's final agency decisions denying Plaintiff's applications for discharge of his student loans.

**IT IS THEREFORE ORDERED BY THE COURT** that the U.S. Department of Education's decisions denying Plaintiff's applications for student loan discharge are **affirmed**.

**IT IS SO ORDERED.**

Dated: October 24, 2022

S/ Julie A. Robinson<br>
JULIE A. ROBINSON<br>
UNITED STATES DISTRICT JUDGE